# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| NOVEDEA SYSTEMS, INC. and ANAND DASARI, | § § § | |
| Plaintiffs, | § § | Civil Action No. 6:20-cv-180 |
| v. | § § | **JURY TRIAL DEMANDED** |
| COLABERRY, INC. and RAM KATAMARAJA, | § § § | |
| Defendants. | § § | |

## ORIGINAL COMPLAINT

Novedea Systems, Inc. ("Novedea") and Anand Dasari (together, "Plaintiffs"), by and through their attorneys, for their Complaint against Colaberry, Inc. ("Colaberry") and Ram Katamaraja (together "Defendants"), hereby allege as follows:

### I.     NATURE OF THE ACTION

1. This is a suit among co-owners of two related companies alleging claims for copyright infringement, Lanham Act violations, and various breaches of contract and fiduciary duty.

2. Novedea designed and created a unique training and customer resource software platform known as the Learning Management System or "LMS." LMS is a proprietary software tool used to facilitate student training and administrative activities. LMS is registered with the U.S. Copyright Office under Registration No. TX0008840572, titled "Learning Management System." *See* **Exhibit A**.

3. Without authorization, Defendants have and continue to use Novedea's LMS software, in addition to misrepresenting the nature of Novedea's training services as their own. Plaintiffs seek monetary damages arising from Defendants' unauthorized use and continued misrepresentations.

4. In addition, the relationships among the parties, including the co-ownership of Novedea and Colaberry by Dasari and Katamaraja, give rise to various contractual agreements and fiduciary duties. Defendants Colaberry and Katamaraja have violated those agreements and duties in several respects. Plaintiffs accordingly bring suit to enforce and vindicate those obligations and seek to recover monetary and exemplary damages as provided by law.

## II.     THE PARTIES

5.      Novedea Systems, Inc. is a Texas corporation organized and existing under the laws of the State of Texas, with its principal place of business located at 3737 Maple Shade Ln. Plano, Texas 75075.

6.      Plaintiff Anand Dasari is Novedea's Chief Operations Officer and permanent resident of the State of Texas.

7.      Colaberry, Inc. is a Delaware corporation organized and existing under the laws of the State of Delaware. Colaberry has its headquarters at 3737 Maple Shade Ln., Plano, Texas, 75075. Colaberry can be served via its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 East 7th Street, Suite 620, Austin, Texas, 78701-3218.

8.      Ram Katamaraja is an individual residing in the Commonwealth of Massachusetts. Katamaraja can be served at his place of residence 5 Nickerson Rd., Lexington, Massachusetts, 02421.

## III.     JURISDICTION AND VENUE

9.      The Court has original and exclusive subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this Complaint states claims arising under an Act of Congress relating to Copyrights, 17 U.S.C. § 101, *et seq*.

10.     This Court has personal jurisdiction over Defendants because they have committed acts giving rise to this action within Texas and within this judicial district. The Court's exercise of jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice because Defendants have established minimum contacts with the forum with respect to both general and specific jurisdiction. Defendants transact substantial business in the State of Texas and this Judicial District. For example, Defendants have committed acts of infringement in this District, by

among other things, their continued unauthorized use of Novedea's LMS software platform.

11.     Venue in the Eastern District of Texas is proper pursuant to 28 U.S.C. §§ 1391 & 1400 because a substantial portion of the events giving rise to this suit occurred in this District.

### IV.     FACTUAL BACKGROUND

#### A.     Novedea and the LMS System

12.     Novedea was established in 2005 and formally reorganized in 2012 as a Texas corporation. Founded by Dasari and Katamaraja, Novedea's primary offering is "skills gap training"—the provisioning of specialized technology training (*e.g.* data analytics) to place otherwise-qualified individuals in higher-paying, technology positions. In addition to his role in founding the company, Dasari served as Chief Operating Officer ("COO") with responsibility for Novedea's strategic direction and day-to-day operations, including teaching technical classes for coding, data analytics and database management.

13.     Katamaraja, the other founder, served as Chief Executive Officer ("CEO") of Novedea. He and Dasari were and are 50/50 co-owners of the company.

14.     At the direction of Dasari, Novedea realized multimillion-dollar annual revenues and has been extremely successful in training and staffing its participants. Dasari directed and ran Novedea's operations and development, which were the crucial drivers of Novedea's ongoing profitability.

15.     While Katamaraja was CEO in name, his time, attention and involvement with Novedea was minimal, and diminished even further in 2006 when he moved to Boston in order to pursue a graduate degree. During this time Dasari remained at the Novedea headquarters in Plano, Texas.

16.     Dasari and Katamaraja were consistently paid salaries each year for their employment at Novedea, even while Dasari performed the majority of the work for the company.

Dasari was instrumental in creating Novedea's primary service offering: skills gap training. It was Dasari who led the initiative to create and implement the program which included placing graduating participants in notable technical positions for Fortune 1000 companies. Specifically, for example, Dasari created the skills gap training curriculum, administered the enrollment and scheduling, and actually taught many of the classes. By 2014, Novedea generated $4 million in revenue, largely if not completely due to its successful skills gap training and job placement.

17. In 2012, Dasari began efforts to build a unique training and customer resource software platform for Novedea known as LMS. LMS soon became a major component and proprietary software tool used to facilitate student training and administrative activities. LMS continues to be updated and developed to meet the ever-changing needs of Novedea's students and the marketplace. LMS has proven to be an essential resource to Novedea and its students and has been nothing short of a complete success.

18. LMS was developed by Novedea employees for Novedea. It was created and owned at all times by Novedea.

19. LMS is registered with the U.S. Copyright Office under Registration No. TX0008840572, titled "Learning Management System." *See* **Exhibit A.**

**B.    Colaberry**

20. Colaberry, Inc. was established in 2012 by Dasari and Katamaraja. Upon its creation, Colaberry was a dormant entity and not used for any active operations. It was originally formed to serve as a "back-up" entity to protect Novedea's business. Upon its formation, Dasari and Katamaraja each held, and continue to hold, a fifty percent ownership stake in Colaberry. Like Novedea, Dasari served as COO and Katamaraja served as CEO.

21. In January 2015, after completing his graduate studies in Boston, Katamaraja proposed activating Colaberry and operating it in a similar fashion as Novedea, under his primary

oversight. Katamaraja proposed starting a Boston office for the company, since he was still residing in the Boston area. Dasari would continue to reside in Plano, running the Texas office and training center for Novedea, and Katamaraja would have direct oversight and management of the new Boston office. Thus, in around 2015, Colaberry began active operations principally under Katamaraja's control.

22.     Dasari and Katamaraja were each 50/50 co-owners of both Novedea and Colaberry and they held a common understanding and agreement that they would share any profits, compensation, and salary equally among the two companies and ultimately for themselves. Neither company ever executed formal bylaws, shareholder agreements, or other formal profit-sharing agreements. Instead, Dasari and Katamaraja relied on their informal agreement, based on a mutual longstanding friendship and trust, to fairly allocate the companies' profits between them. This was always the understanding, even as Katamaraja became primarily focused on Colaberry while Dasari primarily ran Novedea. For example, at all times, Katamaraja was paid a salary as an employee of Novedea, even when he was solely concentrating his efforts on Colaberry's business.

      C.      **Katamaraja's Improper Course of Actions**

23.     Katamaraja has always held and maintained control over Colaberry's business operations. Shortly after Katamaraja and Dasari "activated" Colaberry operations, Katamaraja began to take a series of actions calculated to usurp Novedea's service offerings, revenue and intellectual property for the sole benefit of himself at Colaberry and at the expense of Dasari.

24.     For example, the LMS platform contains an online payment feature for student enrollment for Novedea's training courses. Upon payment of tuition, the funds were directly deposited into Novedea's bank account. However in 2016, Katamaraja implemented a change so that Novedea's training funds would instead be deposited into a Colaberry bank account. Katamaraja represented to Dasari that at the time, Colaberry was attempting to obtain a line of credit

for Colaberry and needed to show sufficient revenue in order to qualify. Katamaraja explained that because he and Dasari were 50/50 owners of each company, their respective net incomes would not change if Colaberry were to realize the skills gap training revenue. As Dasari later discovered, that representation ultimately proved false.

25. From the time that Katamaraja subverted Novedea's training revenues to Colaberry, Katamaraja began using those funds improperly to benefit himself at Dasari and Novedea's expense. While Katamaraja continued to pay himself a healthy Colaberry salary, Dasari was not compensated. Additionally, with a million-dollar revenue stream to Colaberry, Katamaraja would be better able to control the money to his own benefit and use. Although Novedea had other limited sources of revenue from its staffing services, millions of dollars from Novedea's training services were now improperly funneled to Colaberry and held under Katamaraja's control—despite the fact that Colaberry neither offered such training services nor had the independent infrastructure to do so.

26. Then in early 2018, without notice to or consent from Dasari, Katamaraja utilized his access to Novedea systems to seize control over the cloud services that hosted LMS. While Dasari retained access to the LMS, Colaberry had now acquired administrative privileges and denied them to Novedea and Dasari. Further, again without notice to or consent from Dasari, Katamaraja changed the domain name of the LMS platform from "training.novedea.com" to "training.colaberry.com," making it appear as though Colaberry offered training services, when it did not. Dasari was unaware of these changes at the time.

27. Subsequently, Katamaraja continued this campaign to gradually and improperly subvert Novedea's intellectual property and training revenue to Colaberry. Despite the fact that Novedea offered skills gap training services, using its own classrooms, teaching staff and proprietary LMS platform, Colaberry misrepresented this service as its own, realizing the revenue

associated with same, all at Katamaraja's hands. Colaberry and Katamaraja continued to maintain control over this revenue without properly accounting for the corresponding profits and appropriately compensating Novedea and Dasari.

28. In approximately May of 2018, Dasari recognized he was not being appropriately compensated by Colaberry. While Katamaraja was paying himself *and* also receiving a salary from Novedea, Dasari was not compensated in an equal fashion. Around the same time, Dasari also discovered the technical changes made to LMS at the direction of Katamaraja and the misrepresentations about Colaberry's services. At this point in time, things started to come to a head and the parties recognized that a business separation was necessary. As a result, discussions began to untangle the business affairs of the two companies and separate.

29. As efforts to separate began, Dasari discovered more of Katamaraja's misrepresentations. Based on information and belief, Katamaraja likely misrepresented Colaberry's value and capabilities to potential third-party investors by claiming Novedea's service offerings, revenues and intellectual property as its own.

30. Friction between the two worsened as negotiations dragged on. Eventually the parties engaged counsel to assist with separation. In July of 2019, Colaberry "suddenly" resumed salary payments to Dasari; an action that Dasari interpreted as Katamaraja's effort to limit his liability for the years of unpaid salary and compensation he failed to properly provide Dasari.

31. Notwithstanding, Katamaraja's actions worsened. In November 2019 Katamaraja directed developers to replace all occurrences of "Novedea" with "Colaberry" in the LMS platform and related course materials, without notice or consent from Novedea or Dasari, and despite the fact that Colaberry neither owned the LMS program, nor the teaching content it provided. Nor, had Colaberry ever paid a license fee to Novedea to use LMS.

D.     "Refactored.ai"

32.    Katamaraja took more egregious actions by taking Novedea's LMS platform and marketing it separately under his own new brand name "Refactored." According to the website, www.refactored.ai – which was created without any authorization, consent, or involvement by Dasari—Katamaraja offered Novedea's LMS directly to third-parties and businesses:



33.    The Refactored website, developed by Katamaraja, contains a screenshot of Novedea's LMS platform and represents that "Refactored's proven model will provide your business with a scalable solution to develop your workforce for success in tomorrow's workplace." Further links to website attribute Katamaraja as the "team lead" for Refactored.ai. Katamaraja's representations to the public through the Refactored website are false. Katamaraja is offering Novedea's intellectual property to the marketplace with the objective of retaining the benefits and proceeds for himself—similar to his actions with regard to Colaberry. As a result, Katamaraja is engaging in false advertising and representations in claiming ownership of Novedea's LMS

platform, when in reality he neither owns it, nor has the authority to use it.

### E. The "Filtered" Project

34. As CEO of Colaberry, Katamaraja proposed to Dasari that Colaberry fund the development of a new complementary software-as-a-service he called "Filtered." The idea was to develop a software tool to better screen and analyze employee resumes on behalf of employers by utilizing a data analytics platform. The purpose of the Filtered project was to more efficiently and strategically match job candidates to the appropriate employers based on resumes and skill sets. Katamaraja proposed that Colaberry fund the software project. Dasari initially agreed to the concept on the premise that he and Katamaraja would jointly and equally benefit, and in 2017 Colaberry began allocating approximately $400,000 to develop the tool.

35. In approximately January 2018, Katamaraja then lead efforts to spin-off the Filtered SAAS project into its own company he named "Filtered.ai." Dasari was opposed to this idea since Colaberry's funds were used to develop a Colaberry product. However, Katamaraja was insistent on the spin-off, and Dasari finally capitulated and Filtered.ai was formed. Katamaraja, his friend, Paul Bilodeau, and Dasari were the primary shareholders; Colaberry itself did not hold shares, despite providing the funding to fuel the project. Katamaraja then appointed himself as CEO of Filtered.ai; Dasari was not an employee or officer.

36. After the spin-off in approximately April 2018, Katamaraja informed Dasari that Filtered.ai needed even more funding from Colaberry, which at that point continued to rely on a revenue stream from Novedea. Again, Dasari was opposed, but Katamaraja represented to Dasari that any further investment would be returned to Colaberry and would be capped at $1 million total. Katamaraja represented to Dasari that a venture capital ("VC") firm was looking to fund Filtered.ai and that when this occurred, Colaberry (and thus Dasari) would be fairly compensated for the investment. In the months that followed, and contrary to Katamaraja's representations and under

Katamaraja's control and direction, Colaberry continued to provide excessive funding to Filtered.ai to approximately $1.5 million, without receiving appropriate compensation, equity, or protection for its investment.

37. In March of 2019 Katamaraja entered into discussions with a VC firm to participate as an equity investor in Filtered.ai. In conjunction with that potential investment, Katamaraja represented to Dasari that Dasari's individual Filtered.ai ownership interest would have to be reduced as a condition of the investment, a transaction which would increase Katamaraja's own interest. Dasari refused to agree to any reduction in ownership since over $1.5 million was already provided to Filtered.ai (despite Katamaraja's representations to the contrary) using money from Colaberry (and indirectly from Novedea), and on the premise that Dasari and Katamaraja would benefit equally from the investment. A short time later, as the deadline for the potential VC investment approached, Katamaraja made a late-night call Dasari and begged for him to agree to the deal. On that call Katamaraja explicitly and emotionally threatened to take his own life if Dasari refused to sign the deal. Dasari ultimately capitulated under this duress and agreed to allow the transaction to proceed. The transaction closed, and as a result the future interest of Filtered.ai will now disproportionately benefit Katamaraja to the determent of Dasari.

## V.   CLAIMS

### COUNT I: COPYRIGHT INFRINGEMENT

38. Plaintiffs incorporate by reference Paragraphs 1-37 herein.

39. By its actions alleged above, Defendants Katamaraja and Colaberry have infringed and continued to infringe on Novedea's federally registered copyrights. Specifically, Defendants continue to use without authorization Novedea's LMS platform thereby infringing on Novedea's exclusive rights under 17 U.S.C. §106.

40. Katamaraja is the dominant influence in Colaberry and determined and/or directed the policies that led to the infringement complained of herein. Accordingly, Katamaraja is jointly and severally liable for direct copyright infringement. *See Broad. Music, Inc. v. It's Amore Corp.*, No. 3:08CV570, 2009 WL 1886038 (M.D. Pa. June 30, 2009) (citing *Sailor Music v. Mai Kai of Concord, Inc.*, 640 F. Supp. 629, 634 (D.N.H.1984)).

41. Katamaraja maintained the right and ability to control the infringing activities of Colaberry and had a direct financial interest in those activities by virtue of his equity ownership in the company and the substantial profits derived from use of the LMS platform. Accordingly, Katamaraja is vicariously liable for copyright infringement. *See, e.g., Broad. Music, Inc. v. Tex Border Mgmt.*, 11 F. Supp. 3d 689, 693-94 (N.D. Tex. 2014).

42. Over the course of the last few months, Novdea through Dasari, has made it clear that if an amicable resolution is not reached, Novedea will promptly enforce its rights against Defendants for its continued infringement of LMS. On April 3rd, 2020, Dasari notified Katamaraja that Colaberry is no longer authorized to use LMS. Notwithstanding, Colaberry and Katamaraja continue to exploit and infringe upon LMS.

43. Accordingly, Defendants' actions constitute willful infringement of Novedea's copyrights inasmuch as they knew, or had reason to know, that their actions constituted copyright infringement; and/or because they acted with reckless disregard to same.

44. As a result of the foregoing, Novedea is entitled to actual damages plus profits of the Defendants, plus attorney's fees and costs of court, for which Defendants are liable. *See* 17 U.S.C. §§ 504 & 505.

45. Novedea believes that it will likely continue to be damaged by Defendants' actions and statements.

## COUNT II: LANHAM ACT VIOLATIONS

46. Plaintiffs incorporate by reference Paragraphs 1-45 herein.

47. Defendants have used false and misleading descriptions of fact and false and misleading representations of fact, in commercial advertising and promotions that misrepresent the nature, characteristics, qualities and origin of Colaberry services. *See* 15 USC § 1125(a)(1)(B).

48. Defendants have represented that Novedea's skills gap training services are their own, when in reality, they are Novedea's and Colaberry neither provides such services, nor has the infrastructure or intellectual property to do so.

49. Additionally, Katamaraja continues to falsely advertise, misrepresent and palm-off the LMS platform as his own through the "Refactored.ai" website.

50. Novedea has been damaged by Defendants' actions because Novedea has suffered diverted sales and lost profits, and Defendants have been unjustly enriched by selling Novedea's services and using Novedea's LMS platform under Colaberry's branding.

51. Novedea believes that it will likely continue to be damaged by Defendants' actions and statements.

## COUNT III: BREACH OF CONTRACT

52. Plaintiffs incorporate by reference Paragraphs 1-51 herein.

53. Dasari and Katamaraja are 50/50 co-owners of Novedea and Colaberry as well as officers of each company. As such they agreed to share equally in the value, compensation and profits of both entities. In addition, Colaberry has agreed to pay salary and compensation to Dasari but failed to do so.

54. Katamaraja breached his agreement with Dasari by failing to equally share the profits and benefits of ownership of Colaberry.

55. Defendant Colaberry breached its agreements with Dasari by failing to provide Dasari his salary and compensation prior to July 2019, at a time when Katamaraja regularly received salary from Colaberry.

56. Dasari has fully performed under the relevant agreements, and has been damaged by Defendants' breach of contract as set forth above.

57. Additionally, Dasari is entitled to recover attorney's fees under Chapter 38 of the Texas Civil Practice and Remedies Code.

### COUNT IV: BREACH OF FIDUCIARY DUTY

58. Plaintiffs incorporate by reference Paragraphs 1-57 herein.

59. Katamaraja owes fiduciary duties to Novedea as an officer of Novedea, and to Dasari arising from their long-time business partnership, their relationship of trust, and because Katamaraja exercises control over the business affairs of Colaberry to the exclusion of Dasari. These fiduciary duties include duties of care, loyalty, good faith and fair dealing, candor, and to avoid self-dealing.

60. Katamaraja breached his fiduciary duties to Plaintiffs Novedea and Dasari in several respects, including but not limited to his diversion of Novedea's skills gap training service revenues to Colaberry. Katamaraja proposed a revenue diversion by representing to Dasari that he wanted to pass through the revenues to help Colaberry obtain a line of credit, and represented to Dasari that both of them would continue to split profits between the companies. This representation was false. Instead of sharing profits equally as he represented, and as he was obligated to do under the parties' agreements and his fiduciary duties, Katamaraja retained those profits in Colaberry under his exclusive control and for his own benefit.

61. As a result, Plaintiffs Novedea and Dasari have been and continue to be damaged in excess of millions of dollars of diverted revenue and accompanying profits that would have otherwise been shared with Novedea and Dasari.

## VI. Jury Demand

62. Plaintiffs hereby demand a jury on all issues so triable.

## VII. Request for Relief

WHEREFORE, Plaintiffs Novedea Systems, Inc. and Anand Dasari respectfully request the following relief:

a. That Defendants be found liable on all claims;

b. That Plaintiffs recover actual and exemplary damages from Defendants Colaberry and Katamaraja as set forth above;

c. That the Court order an accounting of the books and records of Colaberry, with costs taxed against Katamaraja;

d. Reasonable and necessary attorney's fees and costs of court;

e. Pre-judgment and post-judgment interest as allowed by law; and

f. All such other and further relief, both at law and in equity, which this Court deems just and proper.

Dated: April 6, 2020

Respectfully submitted,

By: /s/ Ryan A. Botkin
Ryan A. Botkin
Texas State Bar No. 00793366
ryan@wittliffcutter.com
John D. Saba, Jr.
Texas State Bar No. 24037415
john@wittliffcutter.com

**Wittliff | Cutter, PLLC**
1209 Nueces St.
Austin, Texas 78701
Telephone: (512) 960-4865
Telecopier: (512) 960-4869

**ATTORNEYS FOR PLAINTIFFS**