# EXHIBIT F

## STOCK PURCHASE AGREEMENT

THIS AGREEMENT is made and executed by and between Ramdhan Y Kotamaraja (the "Buyer"), and Srihari Govindarajan and Manjula Dasyam (the "Sellers").

WHEREAS, Sellers own certain outstanding shares of capital stock of NOVEDEA SYSTEMS, INC. (the "Company"), a Texas corporation;

WHEREAS, Buyer desire to purchase from Sellers, and Sellers desire to sell to Buyer, such shares of outstanding capital stock of the Company, upon the terms and conditions hereinafter set forth.

NOW, THEREFORE, the parties hereto agree as follows:

### ARTICLE I
### PURCHASE AND SALE

**1.01 Purchase and Sale of Stock.** Upon the terms and provisions of this Agreement, Buyer agree to purchase and accept delivery from Sellers of, and Sellers agree to sell, assign, transfer and deliver to Buyer, at the Closing provided for in paragraph 1.03 of this Agreement, the following shares of stock of the Company set forth below, free and clear of all liens, claims, charges, restrictions, equities or encumbrances of any kind (referred to herein as the "Subject Stock")

7500 Shares of Subject Stock (75% of the issued Authorized Common Stock) valued at One Hundred and Ninety Five Thousand Dollars and no/100 ($195,000.00).

1.02 **Consideration:** The purchase price consideration for the Subject Stock (the "Purchase Price") in the amount of One Hundred and Ninety Five Thousand Dollars and no/100 ($195,000.00), shall be payable on or before the Closing Date. Buyer express their consent to Sellers to withdraw the amount of $195K being agreed consideration either by payment to Sellers directly or to any third-party to whom they have any obligations arising under this settlement agreement or for any other payment separately agreed by sellers to obtain their release and discharge of NOVEDEA or the Sellers.

**1.03 Transfer of Shares:** Upon the Closing, the 7500 Shares will be transferred to the Buyer.

**1.04 Closing.** The closing of the purchase and sale of the Subject Stock (the "Closing") shall take place at 4835 LBJ FREEWAY, SUITE 750, Dallas, TX (or at such other place as the parties may mutually agree) on Feb 27, 2012 (the "Closing Date"). The Closing Date may be postponed to a later time and date by mutual agreement of the parties. If the Closing is postponed, all references to the Closing Date in this Agreement shall refer to the postponed date.

### ARTICLE II

STOCK PURCHASE AGREEMENT                                                                 Page 1

## DOCUMENTS TO BE DELIVERED

**2.01 Documents to be Delivered By Sellers to Buyer.** At the Closing, Sellers will deliver to Buyer:

(a) stock certificates for the Subject Stock, free and clear of all liens, claims, charges, restrictions, equities or encumbrances of any kind, which certificates shall be duly endorsed to Buyer or accompanied by duly executed stock powers in form satisfactory to Buyer;

(b) such other certificates and documents as Buyer or its counsel may reasonably request, such as corporate documents or resolutions pertaining to this transaction.

(c) All Login and Password Information for online accounts held by the Company with various companies, institutions and other governmental agencies (**Exhibit "A"**) excluding the bank accounts which are agreed to be closed by Buyer and Sellers.

**2.02 Documents to be Delivered by Buyer to Sellers.** At the Closing, Buyer will deliver to Sellers:

(a) payment of the Consideration;

(b) such other certificates and documents as Sellers or their counsel may reasonably request, such as corporate documents or resolutions pertaining to this transaction.

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES

**3.01 Representations and Warranties by Sellers.** Sellers represent and warrants to Buyer as follows:

(a) All of the shares of the Subject Stock have been duly authorized and validly issued and are fully paid and non-assessable and none of them was issued in violation of any preemptive or other right. The Company is not a party to or bound by any contract, agreement or arrangement to issue, sell or otherwise dispose of or redeem, purchase or otherwise acquire the Subject Stock, and, except for this Agreement, there is no outstanding option, warrant or other right to subscribe for or purchase, or contract, agreement or arrangement with respect to the Subject Stock.

(b) Sellers own all of the Subject Stock, free and clear of all liens, claims, charges, restrictions, equities and encumbrances of any kind and has full authority, power and legal right to sell, assign, transfer and deliver the same.

(c) All negotiations relative to this Agreement and the transactions contemplated hereby have been carried on by Sellers directly with Buyer and without the intervention of any

STOCK PURCHASE AGREEMENT                                                                 Page 2

KATAMARAJA000035

other person and in such manner as not to give rise to any valid claim against any of the parties for any finder's fee, brokerage commission or like payment.

(d) As per the Sellers knowledge below are the Company bank accounts existing at the time of closing:
Bank of America with the account number 004886764621,
Bank of America with the account number 488015879246, and
First Financial Bank with the account number 91110006326

**3.02 Representations and Warranties by Buyer.** Buyer represent and warrant to Sellers as follows:

(a) Buyer have full authority, power and legal right to enter into this Agreement and acquire the Subject Stock.

(b) All negotiations relative to this Agreement and the transactions contemplated hereby have been carried on by Buyer directly with Sellers and without the intervention of any other person and in such manner as not to give rise to any valid claim against any of the parties for any finder's fee, brokerage commission or like payment.

**3.03 Disclaimer of Warranties; "AS-IS" Conveyance; Inspection.**

(a) BUYER WARRANTS AND ACKNOWLEDGES TO AND AGREES WITH SELLER THAT BUYER IS PURCHASING THE ASSETS IN AN "AS IS" CONDITION "WITH ALL FAULTS" AND SPECIFICALLY AND EXPRESSLY WITHOUT ANY WARRANTIES, REPRESENTATIONS OR GUARANTEES, EITHER EXPRESS OR IMPLIED, OF ANY KIND, NATURE, OR TYPE WHATSOEVER FROM OR ON BEHALF OF THE SELLER. BUYER ACKNOWLEDGES THAT BUYER HAS NOT RELIED, AND IS NOT RELYING, UPON ANY INFORMATION, DOCUMENT, SALES BROCHURES OR OTHER LITERATURE, MAPS OR SKETCHES, PROJECTION, PROFORMA STATEMENT, REPRESENTATION, GUARANTEE OR WARRANTY (WHETHER EXPRESS OR IMPLIED, OR ORAL OR WRITTEN, OR MATERIAL OR IMMATERIAL) THAT MAY HAVE BEEN GIVEN BY OR MADE BY OR ON BEHALF OF SELLER.

(b) BUYER ACKNOWLEDGES TO AND AGREES WITH SELLER THAT WITH RESPECT TO THE ASSETS, SELLER HAS NOT, DOES NOT AND WILL NOT MAKE ANY WARRANTIES OR REPRESENTATIONS, EXPRESS OR IMPLIED, OR ARISING BY OPERATION OF LAW, INCLUDING, BUT IN NO WAY LIMITED TO, ANY WARRANTY OF CONDITION, MERCHANTABILITY, HABITABILITY OR FITNESS FOR A PARTICULAR USE, OR WITH RESPECT TO THE VALUE, PROFITABILITY OR MARKETABILITY OF THE COMPANY.

KATAMARAJA000036

## ARTICLE IV
## BOOKS, RECORDS AND INFORMATION

4.01 **Confidential Information.** Buyer shall exert reasonable efforts to preserve and maintain all proprietary information and trade secrets of the Company received or confirmed in documentary form by Buyer and shall not disclose to any third person or use any such proprietary information or trade secret for personal advantage, except that Buyer shall be free to use and disclose all or any of such proprietary information and trade secrets which (a) were already in Buyer' possession at the time of disclosure to Buyer; (b) are a matter of public knowledge; (c) have been or are hereafter published other than through Buyer; or (d) are lawfully obtained by Buyer from a third person without restrictions of confidentiality. The obligation of Buyer contained in this paragraph shall terminate at the Closing.

4.02 **No Unreasonable Interference.** Pending the Closing, Buyer will not take any action which could reasonably be expected to interfere unreasonably with the business or operations of the Company.

## ARTICLE V
## LIABILITIES

5.01 **Company Operation and Liabilities.** Sellers shall manage the Company until the date of Closing in its ordinary course of business by maintaining the Company accounts. However, Sellers shall not incur any new liabilities or accounts. In the event of any IRS related enquiries Sellers are willing to provide relevant information to the best of Sellers' ability and knowledge. At time of Closing, Buyer shall open a new Company Bank Account. After all of the checks written on the Company Bank Accounts have cleared, Sellers shall close the Company Bank Accounts located at Bank of America with the account number 004886764621, Bank of America with the account number 488015879246, and First Financial Bank with the account number 91110006326 at a reasonable time following the date of Closing not to exceed fourteen (14) days and Sellers shall retain personal property which is specifically identified as follows:

- The personal computer in Srihari Govindarajan's office.
- All personal property in Srihari Govindarajan's office.

## ARTICLE VI
## RESTRICTIVE COVENANTS

6.01. **Covenant Not to Compete.** Seller agrees that for a period starting at the Closing Date and ending on Feb 16th, 2013, Seller shall not, directly or indirectly, carry on or engage in any activity similar in nature to or competing with Company or any variation of Company with only the following:

- Viverae Inc - 10670 N. Central Expressway, Suite 700, Dallas, Texas 75231
- Expressor Software Corporation - 1 New England Executive Park, Burlington, MA 01803

6.02. **Covenant Not to Solicit.** For a period of 18 months after the Closing Date, Seller shall

STOCK PURCHASE AGREEMENT                                                          Page 4

KATAMARAJA000037

not solicit any employee (attached herein as "**Exhibit B**") of Company or another company controlled by Buyer or his representatives retained by Buyer after the Closing Date to leave employment with Company or another company controlled by Buyer or his representatives. The provisions of this paragraph shall be construed as an agreement independent of any other provision contained herein and shall be enforceable in both law and equity, including by temporary restraining orders, temporary injunction, permanent injunction or any other like action.

## ARTICLE VII
## INDEMNIFICATION

7.01   **Indemnification by Buyer.**   From and after the Closing, and subject to the terms and conditions of this Agreement, Buyer will reimburse, indemnify and hold harmless Seller against and in respect of:

(a) Any and all liabilities and obligations of any nature whatsoever or relating to Buyer or the Assets that result from, relate to or arise out of Buyer's ownership of the Assets or the operation of Buyer's business at the Company after the Closing;

## ARTICLE VIII
## OTHER PROVISIONS

8.01 **Survival of Representations and Warranties.** All statements contained in any certificate or other instrument delivered by or on behalf of Sellers or Buyer pursuant to this Agreement shall be deemed representations and warranties hereunder by the party delivering such certificate or instrument.  All representations, warranties and agreements made by Sellers or Buyer in this Agreement or pursuant hereto shall survive the Closing.

8.02 **Assurance of Further Action.**  From time to time after the Closing and without further consideration from Buyer, but at Buyer' expense, Sellers shall execute and deliver, or cause to be executed and delivered, to Buyer such further instruments of sale, assignment, transfer and delivery and take such other action as Buyer may reasonably request in order to more effectively sell, assign, transfer and deliver and reduce to the possession of Buyer any and all of the Subject Stock and consummate the transactions contemplated hereby.

8.04  **Waiver.**  The parties hereto may by written agreement (i) extend the time for or waive or modify the performance of any of the obligations or other acts of the parties hereto or (ii) waive any inaccuracies in the representations and warranties contained in this Agreement or in any document delivered pursuant to this Agreement.

8.05  **Entire Agreement.** This Agreement embodies the entire agreement among the parties and there have been and are no agreements, representations or warranties, oral or written among the parties other than those set forth or provided for in this Agreement.  Buyer hereby acknowledges that he has not relied on any of the warranties or representations of either of the Sellers.  This Agreement may not be modified or changed, in whole or in part, except by a supplemental agreement signed by each of the parties.

STOCK PURCHASE AGREEMENT                                                                                                          Page 5

8.06 **Rights Under this Agreement; Nonassignability.** This Agreement shall bind and inure to the benefit of the parties hereto and their respective successors and assigns, but shall not be assignable by any party without the prior written consent of the other parties. Nothing contained in this Agreement is intended to confer upon any person, other than the parties to this Agreement and their respective successors and assigns, any rights, remedies, obligations or liabilities under or by reason of this Agreement.

8.07 **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of Texas applicable to agreements made and to be performed in the State of Texas and shall be construed without regard to any presumption or other rule requiring the construction of an agreement against the party causing it to be drafted.

8.08 **Headings.** The headings of the articles and paragraphs and subparagraphs of this Agreement are solely for convenience and reference and shall not limit or otherwise affect the meaning of any of the terms or provisions of this Agreement.

8.09 **Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall be an original, but which together constitute one and the same instrument.

EXECUTED in one or more counterparts, each of which shall be deemed an original, on February ___, 2011.

The foregoing instrument was acknowledged before me, the undersigned notary, and I do hereby certify that the above named Srihari Govindarajan proved to me on the basis of satisfactory evidence through a Texas State ID acknowledged the due execution of the foregoing instrument.
Sworn to before me on this 27th day of February 2012

Christine R. Kolassa

CHRISTINA R. KOLASSA
Notary Public, State of Texas
My Commission Expires
September 09, 2014

SELLER: _____ 2/27/12
MANJULADEVI DASYAM BY SRIHARI GOVINDARAJAN AS POA
**MANJULADEVI DASYAM**

SELLER: _____ 2/27/12
**SRIHARI GOVINDARAJAN**

BUYER: _____ 2/27/12
**RAMDHAN Y KOTAMARAJA**

STOCK PURCHASE AGREEMENT

Page 6

KATAMARAJA000039

## EXHIBIT B

## LIST OF EMPLOYEE/CONTRACTORS

Employees:

1. Ananda Dasari
2. Anila Nuthalapati
3. Janithri Mudalige
4. Kiran Nakka
5. Lalit Sharma
6. Sindhu Veermani
7. Srikanth Gona
8. Subba Rao Kambala
9. Subhashini Prattipati
10. Usha Banavar
11. Christopher Palaparthi
12. Krishna Katamaraja

Contractors:

1. Likhita Anne
2. Kishan Golla

KATAMARAJA000040