**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| NOVEDEA SYSTEMS, INC. and ANAND DASARI, | § § § § | |
| Plaintiffs, | § § § | |
| v. | § § | Case No. 6:20-cv-180-JDK |
| COLABERRY, INC. and RAM KATAMARAJA, | § § § § | |
| Defendants. | § § § | |

**MEMORANDUM OPINION AND ORDER ON POST-JUDGMENT MOTIONS**

Before the Court are several post-judgment motions, specifically:

- Defendant Colaberry's motion to amend the final judgment (Docket No. 235);

- Defendant Ram Katamaraja's motion for judgment as a matter of law (Docket No. 236);

- Plaintiff Anand Dasari's motion for a new trial on ownership and control of Colaberry (Docket No. 248); and

- Defendants Colaberry's and Katamaraja's motion for attorneys' fees and costs (Docket No. 243).

The Court will address each motion in turn.

## I.      BACKGROUND

This case stems from the dissolution of a corporate and professional partnership. Novedea is a software company founded by Dasari and Katamaraja in 2005. Docket No. 63 at 3. Dasari served as the Chief Operating Officer, while Katamaraja served as the Chief Executive Officer. *Id.* In 2012, the partners founded

1

Colaberry, Inc. ("Colaberry") to serve as a "backup entity" for Novedea. *Id.* at 5. Soon, however, Katamaraja began to operate Colaberry as a separate company, with the support of Novedea resources, software, and assets. *Id.* at 5–6. Dasari and Novedea alleged that Katamaraja and Colaberry failed to provide adequate accounting and compensation for Novedea assets, as required by a partnership agreement. *See id.* at 8. These complaints ultimately led to negotiations for Katamaraja to buy Dasari's stake in Colaberry. *Id.* at 12–13. When these negotiations failed, Plaintiffs initiated this suit. *Id.* Meanwhile, Defendants filed related suits in Texas and Delaware state courts; Katamaraja dismissed Dasari from his position at Colaberry; and Dasari was locked out of Novedea's corporate accounts. *Id.* at 13–15.

In this case, Plaintiff Novedea brought copyright infringement claims against Katamaraja and Colaberry (Counts I & VI), Lanham Act claims against Katamaraja and Colaberry (Counts III & VI), and a breach of fiduciary duty claim against Katamaraja (Count V). Plaintiff Dasari brought declaratory judgment claims against Colaberry and Katamaraja regarding the ownership and control of Novedea and Colaberry (Count II), breach of contract claims against Colaberry and Katamaraja (Count IV), and a breach of fiduciary duty claim against Katamaraja (Count V).

Defendant Colaberry brought counterclaims of breach of fiduciary duty against Dasari (Count I), federal trade secret misappropriation against Dasari (Count II), Texas trade secret misappropriation against Dasari (Count III), and declaratory judgment claims concerning copyright ownership against Dasari and Novedea (Count IV).

2

The Court dismissed several claims on summary judgment.  Docket No. 116. The parties also stipulated to the dismissal of several claims.  Docket No. 219. Following a January 2022 trial, a jury verdict resolved the remaining claims.  Docket No. 229.  Pursuant to the jury verdict, the Court entered final judgment (1) ordering that Dasari and Katamaraja have an equal right to control Novedea, (2) denying Dasari's declaratory judgment claim regarding the ownership and control of Colaberry, (3) denying Dasari's breach of contract claim, (4) denying Dasari and Novedea's breach of fiduciary duty claims, and (5) declaring Colaberry as the owner of a disputed copyright.  Docket No. 232.

The parties then filed the post-judgment motions addressed below.

## II.    COLABERRY'S MOTION TO AMEND JUDGMENT

Defendant Colaberry's motion to amend the judgment (Docket No. 235) asks the Court to modify the final judgment (Docket No. 232) to indicate that Plaintiffs Dasari's and Novedea's copyright infringement and Lanham Act claims against Colaberry are dismissed with prejudice, rather than without prejudice.  Plaintiffs do not object to this modification of the final judgment pursuant to the parties' January 23, 2022 stipulation (Docket No. 219).  *See* Docket No. 258 at 6:2–19. Accordingly, the Court hereby **GRANTS** the motion.

## III.   KATAMARAJA'S MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendant Katamaraja moves for judgment as a matter of law on Plaintiff Dasari's declaratory judgment claim that Dasari has an equal right to control

3

Novedea.  Docket No. 236.[1]  The jury found that Dasari proved by a preponderance of the evidence that he and Katamaraja had an equal right to control Novedea.  Docket No. 229 at 5.  Katamaraja argues that there is insufficient evidence to support the jury's verdict on this issue.  For the reasons explained below, the Court **DENIES** Katamaraja's motion.

### A.    Waiver

As an initial matter, the Court finds that Katamaraja waived his right to move for judgment as a matter of law on this claim because he failed to move for judgment on this issue during trial under Federal Rule of Civil Procedure 50(a).  "Challenges to the sufficiency of the evidence must be raised in a Federal Rule of Civil Procedure 50(a) motion for judgment as a matter of law before submission of the case to the jury." *Seibert v. Jackson Cnty.*, 851 F.3d 430, 435 (5th Cir. 2017) (quoting *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 995 (5th Cir. 2008)).  "If a party fails to move for judgment as a matter of law under [Rule] 50(a) on an issue at the conclusion of all of the evidence, that party waives both its right to file a renewed post-verdict Rule 50(b) motion and also its right to challenge the sufficiency of the evidence on that issue on appeal." *Md. Cas. Co. v. Acceptance Indem. Ins. Co.*, 639 F.3d 107, 707 (5th Cir. 2011) (quoting *Flower v. S. Reg'l Physician Servs.*, 247 F.3d 229, 238 (5th Cir. 2001).

---

[1]  Katamaraja originally filed a motion for judgment as a matter of law, or alternatively, for a new trial on January 27, 2022 (Docket No. 233).  The motion considered here (Docket No. 236) amended the prior motion and stated that Katamaraja no longer seeks a new trial.  Docket No. 236 at 1 n.1.  Accordingly, the Court **DENIES** as moot Katamaraja's prior motion (Docket No. 233).

Here, Defendants Katamaraja and Colaberry filed a lengthy Rule 50(a) motion and two supplements before the case was submitted to the jury.  Docket Nos. 212, 218, 220.  Defendants' Rule 50(a) motion explains in detail the insufficiencies of Plaintiffs' copyright claim (Docket No. 212 at 2–11), breach of contract claim (*id.* at 11–20), fiduciary duty claim (*id.* at 20–23), Lanham Act claim (*id.* at 23–27), derivative claim (*id.* at 27–28), and declaratory judgment claim regarding the ownership of Colaberry (*id.* at 28–30).  Defendants' first supplement addresses Dasari's claim regarding the control and ownership of Colaberry (Docket No. 218 at 2–5) and Plaintiffs' breach of fiduciary duty claim (*id.* at 5–6).  And Defendants' second supplement addresses whether Plaintiffs' breach of fiduciary duty claim is barred by the statute of limitations.  Docket No. 220.  But neither the motion nor the supplements ever mentioned Dasari's claim regarding an equal right to control Novedea.

Further, counsel for Defendants presented oral argument under Rule 50(a) during trial.  Trial Tr. 1/20/20 at 787:9–814:1.  Again, counsel never discussed Dasari's claim of control of Novedea.

Katamaraja argues that he did not waive his right to a post-trial Rule 50(b) motion on this issue because he moved for judgment as a matter of law under Rule 50(a) on *all* claims and because "technical noncompliance" can be excused.  Docket No. 245 at 6–10.  Neither argument is persuasive.

The introduction to Katamaraja's initial Rule 50(a) motion specifically limits the claims for which Katamaraja sought judgment as a matter of law, stating that

5

"Plaintiffs have failed to meet their burden to establish *a number of their claims* against Defendants," and asking the Court to enter judgment as a matter of law dismissing the "causes of action set forth herein."   Docket No. 212 at 1 (emphasis added).  As noted above, the motion does not mention control of Novedea.  And the fact that Katamaraja's Rule 50(a) motion and supplements address almost every other issue in the case with specificity belies the argument that the control-of-Novedea issue was implicit in that motion.

Further, while the Court may excuse "technical noncompliance," it may only do so "when the purposes of [Rule 50(a)] are satisfied."  *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 288 (5th Cir. 2007).  Here, Katamaraja did not satisfy the Rule's purposes as to the control-of-Novedea claim because Katamaraja never explained to Plaintiffs or the Court what evidence was lacking as to that claim—as he did in detail on the other claims in the Rule 50(a) motion.

Finally, while an "extremely brief and conclusory" motion may suffice, Katamaraja failed to even reach that standard here.  *See Feld Motor Sports, Inc. v. Traxxas, L.P.*, 861 F.3d 591, 596 (5th Cir. 2017).  Neither the motion nor the two supplements nor Defendants' oral argument ever mentioned the control-of-Novedea claim.

Accordingly, because Katamaraja failed to move for judgment as a matter of law under Rule 50(a), he has waived the right to bring this motion under Rule 50(b), and the Court must deny it on this basis alone.

### B.    Merits

Even if Katamaraja had preserved his post-trial motion on the issue of Dasari's control of Novedea, the motion fails on the merits.

Judgment as a matter of law is appropriate only when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the [non-moving] party on that issue." FED. R. CIV. P. 50(a).  A motion for judgment as a matter of law is thus "a challenge to the legal sufficiency of the evidence supporting the jury's verdict." *Ford v. Cimarron Ins. Co.*, 230 F.3d 828, 830 (5th Cir. 2000).  In resolving such challenges, the Court must view all evidence in the light most favorable to the non-moving party. *Universal Truckload, Inc. v. Dalton Logistics, Inc.*, 946 F.3d 689, 695 (5th Cir. 2020); *Galan v. Valero Servs., Inc.*, 777 F. App'x 756, 757 (5th Cir. 2019); *In re Provident Royalties L.L.C.*, 777 F. App'x 115, 116 (5th Cir. 2019).

The Court may not make credibility determinations or weigh the evidence, and it must draw all reasonable inferences from the evidence that favors the non-moving party. *See N. Cypress Med. Ctr. Operating Co. v. Aetna Life Ins. Co.*, 898 F.3d 461, 473 (5th Cir. 2018); *Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 966 (5th Cir. 2016) (quoting *Brennan's Inc. v. Dickie Brennan & Co. Inc.*, 376 F.3d 356, 362 (5th Cir. 2004)).  The Fifth Circuit has counseled that "judgment as a matter of law should not be granted unless the facts and inferences point 'so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion.'" *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235 (5th

Cir. 2001) (quoting *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1322 (5th Cir. 1994)).

Here, Katamaraja argues that no reasonable jury could find that Dasari has an equal right to control Novedea.  Katamaraja asserts that Dasari must be a director of Novedea to have equal control.  Docket No. 236 at 6.  And Katamaraja contends that the evidence presented at trial "conclusively established" that Katamaraja was the sole director of Novedea since February 2012.  *Id.* at 6–8.

Katamaraja's motion, however, ignores significant trial evidence to the contrary.  For example, Dasari testified repeatedly that he was a director of Novedea. When asked how many directors Novedea had, Dasari answered: "Two directors." Trial Tr. 1/18/22 at 179:10–14.  Dasari explained that he and Katamaraja were "co-directors."  *Id.* at 179:17–21.  When asked about his roles at Novedea, Dasari asserted: "I was a director.  I was a chief operating officer."  *Id.* at 187:2.  Dasari also affirmed that he and Katamaraja were both directors.  *Id.* at 189:17–18.  And Dasari confirmed that he was a director for Novedea from 2012 to April 2020.  *Id.* at 191:6–11.

Dasari also presented documentary evidence showing that he was a Novedea director.  Specifically, a January 2012 affidavit by Katamaraja states: "In addition to myself, there are three other directors of Novedea . . . ."  PX-5.  The same affidavit lists Dasari as one of the three directors.  *Id.*  And Novedea meeting minutes from January 2012 also indicate that Dasari is a director of Novedea.  PX-2.

While Katamaraja presents evidence that Dasari was *not* a director of Novedea, when considering judgment as a matter of law, the Court may not make credibility determinations or weigh the evidence, but must draw all reasonable inferences from the evidence that favor the non-moving party. *E.g.*, *N. Cypress Med. Ctr. Operating Co.*, 898 F.3d at 473. Katamaraja asks the Court to recognize his evidence that Dasari was not a director, while ignoring Dasari's contrary testimony and evidence. Because it would be improper for the Court to do so, Katamaraja's motion fails on the merits.

*    *    *    *

Accordingly, the Court denies Katamaraja's motion for judgment as a matter of law under Rule 50(b) because Katamaraja failed to move for judgment on this claim under Rule 50(a) and because there was legally sufficient evidence to support the jury's verdict. *See Seibert*, 851 F.3d at 435; *In re Isbell Records,* 774 F.3d at 867; *Arsement*, 400 F.3d at 247; *Ford*, 230 F.3d at 830.

## IV.    DASARI'S MOTION FOR A NEW TRIAL

Plaintiff Dasari moves for a new trial under Federal Rule of Civil Procedure 59 on his claims that he co-owns and shares control of Colaberry. Docket No. 248. Although the jury found against him on these claims (Docket No. 229 at 5), Dasari argues that the jury findings are against the great weight of the evidence. For the reasons explained below, the Court **GRANTS** Dasari's motion regarding his claim of ownership but **DENIES** the motion regarding his claim of control.

Rule 59 provides that a court "may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore

9

been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A).  "The rule does not specify what grounds are necessary to support such a decision." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985).  Rather, it depends on "the trial court's historic power to grant a new trial based on its appraisal of the fairness of the trial and the reliability of the jury's verdict." *Id.*  "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed." *Id.*; *see also Seibert v. Jackson Cnty.*, 851 F.3d 430, 438–39 (5th Cir. 2017) ("Under our precedent, '[a] trial court should not grant a new trial on evidentiary grounds unless the verdict is against the great weight of the evidence.'") (quoting *Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 269 (5th Cir. 1998)).  The Fifth Circuit has stated that, in ruling on a motion for new trial, the jury's verdict may not be set aside lightly. *See, e.g., Ellis v. Weasler Eng'g, Inc.*, 258 F.3d 326, 343 (5th Cir. 2001).

In determining whether the verdict is "clearly contrary to the weight of the evidence," the Court "weighs all the evidence, but need not view it in the light most favorable to the nonmoving party." *Smith*, 773 F.2d at 613; *see also* 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2806 (3d ed. 2020) ("The judge is not required to take that view of the evidence most favorable to the verdict-winner.").  The Court should respect the jury's "collective wisdom," but "if [the Court] is not satisfied with the verdict of a jury, [it] has a right—and indeed the duty—to set the verdict aside and order a new trial." *Smith*, 773 F.2d at 613.  A jury's verdict

should be set aside, however, only if it "is against the great, not merely the preponderance, of the evidence."  *Jones v. Wal-Mart Stores, Inc.*, 870 F.2d 982, 986 (5th Cir. 1989).

### A.     Ownership of Colaberry

The parties do not dispute that in January 2012, Katamaraja and Dasari each owned an equal 750 shares of Colaberry.  *See* Docket No. 248 at 2; Docket No. 252 at 1; Trial Tr. 1/19/22 at 515:23–25.  Katamaraja asserts that he later received an additional 10% distribution of Colaberry shares.  Docket No. 252 at 4.  Based on this alleged reallocation of the total number of shares, Katamaraja claims to hold 2,707,767 shares and argues that Dasari retains 2,255,639 shares.  *Id.*  Dasari, however, argues that there is no evidence this redistribution ever occurred, and thus the jury finding that he does not own 50% of Colaberry is against the great weight of the evidence.  The Court agrees.

To be sure, evidence at trial showed that the parties discussed various plans to reallocate shares—including distributing a greater percentage of Colaberry shares to Katamaraja.  *E.g.*, DX-26; DX-36; DX-37; DX-38; DX-39; DX-45; DX-46.  But nothing in the record demonstrates that these plans were ever consummated.  For example, on January 24, 2015, Colaberry board minutes indicate that Katamaraja and Dasari approved allocating additional shares to Katamaraja and issuing new shares to Murali Mallina, Ali Muwwakkil, Paul Bilodeau, Anand Musunur, Kishan Golla, and Christopher Palaparthi.  DX-26.  But there is no evidence these share distributions occurred, and later board minutes suggest they did

11

not.  *See* DX-43 at 7.  In December 2018, moreover, Katamaraja proposed distributing Colaberry shares to himself, Dasari, Muwwakkil, and Bilodeau.  DX-39.  But an email indicates that this process was ongoing and incomplete, as Katamaraja directed the recipient:  "Before you proceed further, lets [sic] get on a call and discuss."  *Id.* at 1. And in January 2019, an email from an attorney to Katamaraja attached copies of new Colaberry stock certificates showing 2,706,767 shares to Katamaraja and 2,255,639 shares to Dasari.  DX-46.  But the copies were not signed.  And the email indicates the redistribution was not yet final:  "Once we finalize the other documents, we will send the original stock certificates and documents for your records."  *Id.*  There is no evidence the final stock certificates were ever issued.

On the other hand, Dasari presented substantial evidence that no reallocation of stock, either to Katamaraja or to any other Colaberry employee, ever occurred. Colaberry's 2016 Delaware annual franchise tax report, filed by Katamaraja in February 2017, for example, indicates that there were only 1,500 shares of authorized Colaberry stock.  DX-24.  Presumably these are the same 1,500 shares Katamaraja and Dasari split evenly in 2012.  In September 2018, moreover, Colaberry applied for a Texas Workforce Commission license.  PX-59.  That application, which Katamaraja signed, indicates that Katamaraja and Dasari each owned 50% of Colaberry.

Further, several witnesses testified that the proposed stock distributions never occurred.  Dheeraj Akula testified that he understood Katamaraja and Dasari to be 50/50 owners of Colaberry.  Trial Tr. 1/19/22 at 570:1–14.  He further testified that the proposed distributions of Colaberry shares to employees were never

consummated.  *Id.* at 573:17–19.  Murali Mallina testified that although Katamaraja discussed distributing Colaberry shares to employees, Mallina never received any shares.  Trial Tr. 1/20/22 at 682:14–687:2.  Mallina also understood that no other employee had ever received Colaberry shares and that Colaberry ownership remained split 50/50 between Katamaraja and Dasari at the time of trial.  *Id.* at 682:10–13; 684:9–14.  Similarly, Ali Muwwakkil understood that Katamaraja and Dasari remained 50/50 owners of Colaberry in late 2019.  Trial Tr. 1/20/22 at 875:17–21.

Katamaraja argues that under Delaware law the Court can validate a defective stock issuance where some technical formalities were not followed.  Docket No. 252 at 4.  But there was no stock issuance here.  Rather, as noted above, while Colaberry may have authorized distribution of stock, there is no evidence that the company every issued or attempted to issue any new stock.

Where, as here, the jury verdict is against the great weight of the evidence, a new trial is proper.  The Court therefore grants Dasari's motion for a new trial on his declaratory judgment claim concerning his ownership of Colaberry.

## B.    Control of Colaberry

Dasari's motion regarding his claim of control of Colaberry, however, fails.  Unlike the ownership claim, there is substantial evidence that Dasari was not a director of Colaberry—and therefore is not entitled to equal control of the company as Katamaraja.  *See* 8 Del. § 141(a) ("The business and affairs of every corporation organized under this chapter shall be managed by or under the direction of a board of directors . . . .").

Dasari's own trial testimony, for example, acknowledges that Katamaraja was the sole director of Colaberry: "Q. Okay. Did you learn later that he [Katamaraja] – he established himself as the sole director of Colaberry in this document? A. Yeah." Trial Tr. 1/18/22 at 238:23–25; *see also id.* at 243:17–18 ("Ram, as *the* director, he take [sic] that president role." (emphasis added)).   Colaberry's foundational documents also show that Katamaraja is the only director of Colaberry. The minutes of the meeting of the incorporator indicate that Katamaraja was elected as the only director. DX-2 at 7. And the Colaberry Bylaws state: "The number of directors which shall constitute the whole board shall be one (1)." DX-4 at 3. Finally, a January 5, 2012 Colaberry document describes Katamaraja as the "sole director of Colaberry Inc." PX-45. Although there is some contradictory evidence—including other Dasari testimony and some documents describing Dasari as a director—the jury's verdict on this issue is not against the great weight of the evidence.

Dasari also argues that the Court should have instructed the jury on the de facto director doctrine as Plaintiffs requested. Docket No. 248 at 12. This argument fails for two reasons. *First*, Plaintiffs' request to add a de facto director instruction was untimely. The pretrial deadline for proposed jury instructions was December 21, 2021. Docket No. 67 at 8. Plaintiffs' proposed instructions as to Dasari's declaratory judgment claims were minimal and did not mention de facto directorships. Docket No. 160, Ex. 7 at 50–53. At the close of evidence, the Court asked the parties to send a revised jury charge by 5:00 p.m. on January 22, 2022. Trial Tr. 1/21/22 at 1112:11–16. Plaintiffs filed their first and only request for a de facto director jury instruction

14

at 5:33 a.m. on Monday, January 24, 2022—hours before the final jury charge conference.   Docket No. 222.   Plaintiffs did not seek permission for an untimely request and have not shown that a de facto jury instruction could not have been reasonably anticipated.  *See* FED. R. CIV. P. 51(a)(2).

*Second*, Dasari has not shown that the de facto director doctrine applies in this case.  That doctrine makes the acts of a de facto officer binding "so far as third persons are concerned."  *Dillon v. Scotten, Dillon Co.*, 335 F. Supp. 566, 569 (D. Del. 1971). "The doctrine of *de facto* directors does not apply in cases not involving third parties." *Id.*  That is, the doctrine does not apply where the parties dispute directorships and control of the corporation, as is the case here.  *Id.*

Accordingly, Dasari has not shown that a new trial is warranted as to his declaratory judgment claim concerning control of Colaberry, and the Court therefore denies his motion as to that claim.

## V.    DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

Defendants Katamaraja and Colaberry move for an award of attorneys' fees and costs on Plaintiffs Novedea's and Colaberry's copyright infringement and Lanham Act claims.  Docket No. 243.  The parties jointly stipulated to dismissal of these claims under Federal Rule of Civil Procedure 41(a)(1)(A)(ii) on January 23, 2022. Docket No. 219.[2] Defendants argue that they are the prevailing party on these

---

[2]  The Court had previously dismissed Plaintiff Novedea's copyright and Lanham Act claims *without* prejudice in granting Katamaraja's motion for partial summary judgment in August 2021.  Docket No. 9 at 9.

claims and seek recovery of attorneys' fees under the relevant statutes.  For the reasons explained below, the Court **DENIES** Defendants' motion.

Under 17 U.S.C. § 505, the Court has discretion to award full costs, including reasonable attorneys' fees to the prevailing party in a copyright action.  Under 15 U.S.C. § 1117, the Court may award reasonable attorneys' fees to the prevailing party in "exceptional" Lanham Act actions.

### A.    Prevailing Party

In both copyright and Lanham Act actions, attorneys' fees may only be awarded to a "prevailing party."  *See, e.g.*, *Howard v. Weston*, 354 F. App'x 75, 77 (5th Cir. 2009) (copyright); *Wickfire, L.L.C. v. Woodruff*, 989 F.3d 343, 353 (5th Cir. 2021) (Lanham Act).  Here, Defendants have failed to show that they are the prevailing party on Plaintiffs' copyright and Lanham Act claims.

Generally, the prevailing party is "one who has been awarded some relief by the court."  *Buckhannon Bd. & Care Home, Inc. v. W.V. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001).  "The touchstone of the prevailing party inquiry . . . is the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute."  *Davis v. Abbott*, 781 F.3d 207, 214 (5th Cir. 2015) (quoting *Sole v. Wyner*, 551 U.S. 74, 82 (2007)).  Also, "there must be 'judicial *imprimatur* on the change' in the legal relationship between the parties."  *Id.* (quoting *Buckhannon*, 532 U.S. at 605).  Thus, private settlements typically do not result in a prevailing party.  *Id.* (citing *Buckhannon*, 532 U.S. at 604 n.7, 605).

As an initial matter, the dismissals of Plaintiffs' copyright and Lanham Act claims do not appear to bear "judicial imprimatur."  Rather, the parties stipulated to the dismissals—both of Plaintiffs' copyright and Lanham Act claims *and* Defendants' trade secret misappropriation and breach of fiduciary duty claims—pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii).   Docket No. 219.   A stipulated dismissal under Rule 41(a)(1)(A)(ii) is self-executing upon filing, and "no court order is required."  *Adam Techs. Int'l S.A. de C.V. v. Sutherland Global Servs., Inc.*, 729 F.3d 443, 449 (5th Cir. 2013).   Several courts have therefore held that a Rule 41(a)(1)(A)(ii) stipulated dismissal does not bear the judicial imprimatur necessary to find a prevailing party.  *E.g.*, *Xlear, Inc. v. Focus Nutrition, LLC*, 893 F.3d 1227, 1238 (10th Cir. 2018) (voluntary stipulation under Rule 41(a)(1)(A)(ii) resulting in clerk of court terminating the case "does not constitute sufficient judicial *imprimatur* for the prevailing party analysis" (citing *Bell v. Bd. of Cnty. Comm'rs*, 451 F.3d 1097, 1104 (10th Cir. 2006)); *Hopkins Mfg. Corp. v. Cequent Performance Prods., Inc.*, 223 F. Supp. 3d 1194, 1202–03 (D. Kan. 2016); *Gibson v. Walgreen Co.*, 2008 WL 2607775, at *3 (M.D. Fla. July 1, 2008); *Manhattan Construction Co. v. Phillips*, 2012 WL 13001901, at *5 (N.D. Ga. Dec. 12, 2012); *Johnson v. Pringle Dev., Inc.*, 2006 WL 2189542, at *2 (M.D. Fla. Aug. 1, 2006); *Bryant v. MV Transp., Inc.*, 231 F.R.D. 480, 481 (E.D. Va. 2005).

Further, in any event, the Fifth Circuit has held in civil rights cases that "a defendant is not a prevailing party within the meaning of § 1988 when a civil rights plaintiff voluntarily dismisses his claim, unless the defendant can demonstrate that

17

the plaintiff withdrew to avoid a disfavorable judgment on the merits." *Dean v. Riser*, 240 F.3d 505, 511 (5th Cir. 2001); *see also Fox v. Vice*, 594 F.3d 423, 426–27 (5th Cir. 2010), *vacated on other grounds*, 563 U.S. 826 (2011). The same policies discussed in *Dean* apply in the copyright and Lanham Act contexts here. That is, fee awards "should empower trial courts to balance the concerns for encouraging vigorous enforcement of [copyright and Lanham Act claims] against discouraging frivolous litigation." *Dean*, 240 F.3d at 511.

Here, Defendants have not demonstrated that Plaintiffs withdrew their claims on the eve of a jury verdict to avoid a disfavorable judgment on the merits. And two significant factors weigh against that view. *First*, Novedea's claims—which the Court had dismissed without prejudice six months earlier—were not before the jury. *See* Docket No. 116. Accordingly, Novedea had no incentive to dismiss those claims to avoid an unfavorable verdict. *Second*, the stipulation dismissing Plaintiffs' copyright and Lanham Act claims was a joint stipulation that also dismissed Colaberry's trade secret misappropriation claims and breach of fiduciary duty claims with prejudice. Docket No. 219 at 2. Thus, the stipulated dismissal of competing claims resembles the quid pro quo of a private settlement rather than Plaintiffs unilaterally withdrawing their claims to avoid a negative judgment. *See Davis v. Abbott*, 781 F.3d 207, 217 (5th Cir. 2015) ("In *Buckhannon,* the Court emphasized that there must be 'judicial *imprimatur* on the change' in the legal relationship between the parties. 532 U.S. at 605. That meant that private settlements . . . no longer satisfied the prevailing-party test. *See id*. at 604 n. 7, 605."); *Pro. Liab. Ins. Servs., Inc. v. U.S.*

*Risk, Inc.*, 2018 WL 2215599, at *1 (W.D. Tex. May 14, 2018) ("On the other hand, 'private settlements that do not entail the judicial approval and oversight involved in consent decrees' will not have the requisite 'judicial *imprimatur*' to entitle a party to attorney's fees." (citing *Salazar v. Maimon*, 750 F.3d 514, 521 (5th Cir. 2014))).

Defendants rely heavily on *Automation Support, Inc. v. Humble Design, L.L.C.*, 734 F. App'x 211 (5th Cir. 2018), to argue that Plaintiffs' stipulated dismissal renders them the prevailing party.  But in *Automation*, the plaintiff sought and obtained the defendant's agreement to a stipulated voluntary dismissal of his Texas Theft Liability Act ("TTLA") claim in lieu of responding to the defendant's summary judgment motion, in which the defendant had argued that he should be awarded attorneys' fees under the TTLA.  *Id.* at 212.  In other words, the plaintiff gave up to avoid an unfavorable judgment.  Further, both the district court and the Fifth Circuit looked to Texas law in applying the TTLA's mandatory fee shifting—which holds that "a defendant is a prevailing party when a plaintiff nonsuits a case with prejudice." *Automation Support, Inc. v. Humble*, 2017 WL 11496800, at *2 (N.D. Tex. Feb. 14, 2017) (citing *Epps v. Fowler*, 351 S.W.3d 862, 868–69 (Tex. 2011)); *Automation*, 734 F. App'x at 215.[3]  Thus, in *Automation*, there was no indication of the quid pro quo that appears to have occurred here.  And *Automation* was analyzing prevailing party under the mandatory fee-shifting provision of the TTLA, which does not necessarily apply to the copyright and Lanham Act claims here.  Finally, the *Automation* defendant specifically reserved the right to pursue attorneys' fees, which Defendants

---

[3] The Court notes that the Fifth Circuit did not address the judicial imprimatur requirement in *Automation*.

did not do in the joint stipulation in this case.  *Automation*, 734 F. App'x at 212; *see* Docket No. 219.

Because the joint stipulation of dismissal here bears the imprint of a private settlement agreement and Defendants have not demonstrated that Plaintiffs withdrew their claims to avoid a disfavorable judgment on the merits, Defendants are not the prevailing party on their copyright and Lanham Act claims, and the Court therefore denies the fee request on this basis alone.

## B.     Merits

Even if Defendants were the prevailing party on these claims, their request for attorneys' fees fails on the merits.

### 1.     Copyright

Copyright fee awards are discretionary under § 505, but they are "the rule rather than the exception and should be awarded routinely." *Positive Black Talk, Inc. v. Cash Money Recs., Inc.*, 394 F.3d 357, 381–82 (5th Cir. 2004), *abrogated on other grounds*, *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010).  Fee awards, however, are not automatic.  *Virgin Recs. Am., Inc. v. Thompson*, 512 F.3d 724, 726 (5th Cir. 2008) (per curiam).  In exercising their discretion, courts consider several non-exclusive factors:  frivolousness, motivation, objective unreasonableness, and the need to either compensate or deter.  *Id.* (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 & n.19 (1994)).  The balancing of these *Fogerty* factors must further the purposes of the Copyright Act: "encouraging and rewarding authors' creations while also

enabling others to build on that work." *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 204 (2016).

*First*, the Court considers the frivolousness and objective reasonableness of Plaintiffs' copyright claim.  A key function of copyright law's fee-shifting provision is encouraging parties to litigate strong positions, either as a plaintiff or defendant, and discouraging parties from commencing or settling nuisance suits.  *Id.* at 204–05. While all elements must be considered, this factor may be given special weight.  *Id.* at 209.

Here, although the jury ultimately decided that Colaberry owns the copyright in the LMS software, Docket No. 229 at 6, Plaintiffs' copyright claim was not objectively unreasonable or frivolous.  The elements of a copyright infringement claim are (1) ownership of a copyright and (2) unauthorized copying.  *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 499 (5th Cir. 2012).  Plaintiffs attached Novedea's certificate of registration for the copyright in the LMS software to the operative complaint—prima facie evidence of Novedea's ownership of a valid copyright.  *See* Docket No. 63, Ex. 1; *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004).  Plaintiffs also presented evidence that Novedea was concerned about copyrighting its software platform as early as October 2012.  PX-10 at 45; Trial Tr. 1/18/22 at 211:15–21.  Plaintiffs' witness Murali Mallina, moreover, testified that he drafted certain portions of LMS code while employed by Novedea and that Ali Muwwakkil, another Novedea employee, drafted additional LMS code.  *E.g.*, Trial Tr. 1/20/22 at 645:14–648:1; 655:23–656:24; 657:11–659:12.  Mallina also testified that

Novedea's code repository was transferred to Colaberry's GitHub repository around 2016.  Trial Tr. 1/20/22 at 643:23–644:4; 668:3–13.  This evidence of a transfer of Novedea's code to Colaberry demonstrates access to and copying of a work that Novedea believed it owned.  Accordingly, this factor weighs against awarding fees to Defendants.

*Second*, the Court considers Plaintiffs' motivation in bringing their copyright claims.  Infringement claims brought to protect copyrights have proper motivation, whereas suits brought with "malevolent intent" do not.  *Virgin Recs.*, 512 F.3d at 726.  Specifically, litigation meant to interfere with another party's business, cause the other party to incur needless legal expenses, or extract settlement is improper.  *Virtual Chart Sols. I, Inc. v. Meredith*, 2020 WL 896674, at *6 (E.D. Tex. Feb. 25, 2020), *appeal filed sub nom.*, *Virtual Chart Sols. I, Inc. v. Surgical Notes, Inc.*, No. 20-40155 (5th Cir. 2020).

Plaintiffs' copyright claims were two of many claims brought by both sides in this complex litigation.  And Defendants have not presented evidence that Plaintiffs brought their copyright claims with malevolent intent to injure Defendants' business, drive up legal expenses, or extract a settlement.  Rather, Dasari's testimony indicates that, although mistaken, he had a reasonable basis to believe Novedea was the true owner of the copyright in LMS.  *E.g.*, Trial Tr. 1/18/22 at:211:5–214:11.  This factor therefore weighs against a fee award.

*Third*, the Court considers the need to compensate Defendants for defending themselves and to deter Plaintiffs here and similar plaintiffs.  "Compensation helps

to ensure that all litigants have equal access to the courts to vindicate their statutory rights." *Cynthia Hunt Prods., Ltd. v. Evolution of Fitness Hous., Inc.*, 2007 WL 3047220, at *2 (S.D. Tex. Oct. 18, 2007) (quoting *Quinto v. Legal Times of Wash., Inc.*, 511 F. Supp. 579, 581 (D.D.C. 1981)).  It also prevents copyright law from going unenforced where there is no economic incentive to defend (or pursue) a claim through expensive litigation.  *Id.*  Awarding fees to a successful defendant may also deter future litigants from pursuing "overaggressive assertions of copyright claims." *Kirtsaeng*, 579 U.S. at 209.  Here, although Plaintiffs did not succeed on their copyright claims, there is no suggestion that their claims were "overaggressive" or should never have been brought in the first place.  Further, "[p]laintiffs should not be deterred from bringing future suits to protect their copyrights because they brought an objectively reasonable suit." *Virgin Recs.*, 512 F.3d at 727.  And here, Plaintiffs' copyright claims were not objectively unreasonable, and thus there is no need to deter future litigants.  This factor, therefore, also weighs against a fee award.

Having considered the *Fogerty* factors, the Court finds that Defendants are not entitled to attorneys' fees on Plaintiffs' copyright claims even if Defendants had prevailed on these claims.

## 2.    Lanham Act

The Lanham Act provides that a court may award reasonable attorneys' fees to the prevailing party "in exceptional cases."  15 U.S.C. § 1117(a).  A case is "exceptional" where the prevailing party demonstrates that "the case stands out from others with respect to the substantive strength of a party's litigating position" or "the

unsuccessful party has litigated the case in an 'unreasonable manner.'" *Baker v. DeShong*, 821 F.3d 620, 625 (5th Cir. 2016) (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 555 (2014)).   Determining whether a case is "exceptional" is committed to the sound discretion of the district court and is measured on a "case-by-case" basis under the totality of the circumstances.  *Id.* (citing *Octane Fitness*, 572 U.S. at 555); *see also Stragent, LLC v. Intel Corp.*, 2014 WL 6756304, at *3 (E.D. Tex. Aug. 6, 2014) (stating that an award of attorneys' fees "in patent cases should be reserved for rare and unusual circumstances").

Defendants argue that the crux of Plaintiffs' Lanham Act claim is both parties' use of a stock photo.  Docket No. 243 at 11–12.  But Plaintiffs' complaint and evidence belie that claim.  Plaintiffs' complaint explains that their Lanham Act claim is that Colaberry improperly represented Novedea's training services and software as its own.  Docket No. 63 at 18–19.  At trial, Dasari testified that Colaberry advertised with marketing materials showing Novedea products and services, supporting the allegation in Plaintiffs' complaint.  Trial Tr. 1/19/22 at 389:6–389:13; PX-77; PX-78.  Although Plaintiffs ultimately voluntarily dismissed their Lanham Act claim, Defendants have not shown that Plaintiffs' claim was substantially weaker than average or that Plaintiffs engaged in unreasonable litigation conduct.  Accordingly, Defendants' request for attorneys' fees on Plaintiffs' Lanham Act claim fails on the merits.

## VI.    CONCLUSION

For the reasons stated above, the Court **GRANTS** Colaberry's motion to amend the judgment (Docket No. 235), **DENIES** as moot Katamaraja's motion for judgment

as a matter of law (Docket No. 233), **DENIES** Katamaraja's amended motion for judgment as a matter of law (Docket No. 236), **GRANTS** Dasari's motion for a new trial regarding the ownership of Colaberry and **DENIES** Dasari's motion for a new trial regarding control of Colaberry (Docket No. 248), and **DENIES** Colaberry and Katamaraja's motion for attorneys' fees and costs (Docket No. 243).  The Court hereby **VACATES** the final judgment entered in this case (Docket No. 232) and will issue an amended final judgment at a later date, consistent with Colaberry's motion to amend the judgment (Docket No. 235) and with any necessary changes concerning Dasari's claim regarding Colaberry ownership.

So **ORDERED** and **SIGNED** this **20th** day of **September, 2022.**

JEREMY D. KERNODLE
UNITED STATES DISTRICT JUDGE